talking about the importance of the American people,   I'd like to invite you all to come up to the podium  I'd like to invite you all to come up to the podium and have a conversation with me. Now here, Council in United States v. Washington and talk about interesting facts. I have a former law clerk who writes best-selling mysteries. She's on the New York Times best-seller list every time she writes a book. And I haven't seen her or talked to her, but boy, this case would make quite a novel, wouldn't it? Certainly would, Your Honor. May it please the Court, my name is David McColgan. I'm the attorney representing Appellant Raymond Washington. And I request three minutes rebuttal time. Three minutes. Thank you, Your Honor. This case involves two cases from the district court that have been consolidated for appeal. One is the counterfeit currency case that was in front of Judge Padova, in which Judge Padova seeks to vacate a fully served sentence and resent it. He actually vacated it, didn't he? He's actually vacated it, yes. And he seeks to resentence. The second involves the false statements case in front of Judge Dalzell. The false statements arising from Mr. Washington's false identification of himself. I can assure you that we all know the facts. You're familiar with that? We know that, Mr. McColgan. What I would like to do is, unless the Court directs me otherwise, is direct about half my time to each of those two. That's your time. Go ahead. Well, for the life of me, I can't understand why you can't appeal the sentence after it's imposed on the original charge. In that event, how in the world do we have jurisdiction now under the collateral order doctrine? Because going through a resentencing is not like going through a trial that the double jeopardy clause has to protect. I mean, I just don't understand. Well, there's two issues. One is that there is a trauma and there's a humiliation to a second sentencing. And to prevent that from taking place in a situation where the lack of jurisdiction is so clear, it does invoke the... You know, I find that unreal that you think that this man, who went to prison, was tried, appealed to the Supreme Court of the United States, and everything, pretending that he was someone else, would be humiliated by the trauma of being sentenced again by the District Court. Are you serious that he's going to be humiliated? It's not a lot of trouble. He doesn't have to get together. I mean, he is... He's a sensitive guy. I mean, are you serious? Why are you arguing humiliation? I don't understand. Why don't you just argue that the District Court had no inherent authority to... Exactly, Your Honor. ...to change the sentence when there's a rule that gives you a time bar? Exactly, Your Honor. This is controlled. Both the statute... That's right. Exactly, Your Honor. But still, they could be raised after the sentence too, couldn't they? Your Honor, there's the interest in judicial economy. The principle of mandamus is to avoid piecemeal litigation. You have a constitutional right. You don't need that not to be tried a second time. Exactly, Your Honor. It's called double jeopardy. Exactly. It violates double jeopardy. And where the issue is so clear, it's appropriate for the court to intercede at this point and make clear to the District Court it simply doesn't have jurisdiction to impose a second sentence and to vacate a fully served prison sentence. If we look in particular to the statute 3582, it makes that lack of jurisdiction crystal clear in ways that this Court has highlighted in Higgs. First of all, there's the express statement in 3582 that the court may not modify a term of imprisonment once it has been imposed except for three narrow circumstances, all of which the government agrees do not even apply in this case. As if that wasn't clear enough, Congress then goes on to state that the provision allows for the modification of the prison term only, quote, unquote, to the extent expressly permitted by statute or Rule 35. So it's clear that there can be an exception to this bar on modification only if it's expressly provided by statute. Now, we know that district courts, well, and court of appeals judges, but district courts have very extensive inherent authority. So why do you think Judge Padova was wrong in stating that he had inherent authority to do that which he did? The Supreme Court has made clear in Carlisle that the concept of inherent authority has to give way when there is a clear statutory limit on jurisdiction. In fact, in Carlisle, the issue was whether or not the district court had the jurisdiction to go beyond the Rule 29 time limit. It has to be a Rule 29 motion for judgment of acquittal within seven days. The defendant in that case was a day out of time. And the court, in exercise of its equitable and inherent authority, had granted that. And that was an important case. The district court found that innocence was involved and that this defendant was innocent. The Supreme Court said, no, this is a clear jurisdictional bar. And the concept of inherent authority or inherent power cannot be used as a mechanism for circumventing or evading clear statutory limits on jurisdiction. Judge Padova said it's a long, and it goes to the concept of inherent power. Yes, Your Honor. Inherent power tends to depend on something that's been in practice for a long time and continually for years and years. Other than Bishop itself, the Seventh Circuit case, is there a long history, a provable history of trial judges having the authority to post hoc change sentences based on an allegation that there has been fraud, which, by the way, no attorney bothers trying to define. But I couldn't, at least in reading the briefs, I couldn't get, Bishop says it. Other cases rely on Bishop. But, I mean, going back to the era when judges had kind of unfettered sentencing authority, going back to the 19th century, the early 20th century, is there any history of judges really, trial judges, really exercising the authority? Because, you know, defendants commit, in a sense, fraud. They may make up family circumstances, which they tell the probation department, which really aren't true, or do a bunch of things that might meet the definition of fraud. I didn't get the sense that this really was a longstanding practice. You're absolutely right. It is not a longstanding practice in terms of federal criminal cases. Which practice in particular are you, I didn't understand from Judge Irena's question, which practices? You mean the practice of vacating a sentence? We're limited to that. Yes, vacating a criminal sentence. Vacating a criminal sentence based on the notion of fraud upon the court. That is limited to the Bishop case. The government has not been able to cite any other cases. I have not found any other cases. And Bishop itself is out of date. It predates the statute 3582C, which came into effect in 87, and also the new version of Rule 35A. Both of those which set clear statutory limits on the jurisdiction of the district court to modify the sentence. I didn't get the sense that judges were going, you know, let's say five years later after a sentence. You know, he committed fraud, Judge Fennick committed fraud on the court. I'm going to vacate the sentence and resentence him. Exactly. Except from Bishop. Except from Bishop and except from the state courts. The government ends up relying on state court cases. That's correct. Two state court cases. But, of course, those are inapposite because the state courts are courts of general jurisdiction whereas the federal courts are courts of limited jurisdiction. Why don't you, let me help you and turn to the other. You said you wanted to do two issues. Yes, Your Honor. And you'll get off on this one. And you want to go to the sentencing on the false statements. Yes. Regarding the Dalzell sentencing. Yes. The Judge Dalzell sentencing, the guideline range for the false statements was four to ten months. The sentence was a six-fold increase over that. Yeah, but this is a pretty terrible thing that this man did. Yes, Your Honor. I'm going to ask the government how he got away with it, but that's another. That's still a mystery as to what happened with the fingerprint cards. We were not able to resolve that. But in any event. Certainly the judge had the right to give a higher sentence than the guidelines provided when this person lied right down the line. That's correct, but the principal grounds for the variance, the significant grounds were grounds that were legally invalid. First of all, the fact that the name Kennard Gregg was used in the caption on appeal to this court on Bonk and then to the Supreme Court. The court below viewed that as multiple violations of 1001, false statements. And it simply is not. 1001 does not apply to submissions to the court, first of all. To a judge. Submissions to a judge. To a judge. That's the word used, not court. To the judge. Very well. It may be that you could end up here with an empty victory, because we could say, yeah, you were wrong. That wasn't a violation. Now resentence of realizing the error of what constituted technically a violation. And the judge may say, fine, I'm coming back with the same thing. But it's still not a valid consideration. Even if we take away the fact that it's not a federal crime. Because counsel, who was me, in using the caption, Kennard Gregg on appeal into the Supreme Court, was simply following the rules of the court. Federal rules of criminal procedure require that once the case is named in the caption as Kennard Gregg or U.S. versus Kennard Gregg, that's the caption on appeal. Secondly, the name Kennard Gregg wasn't. It can be changed. I've issued orders. Yes, it can be changed. It can be changed. But it had not been changed. So until it was changed, and it was changed ultimately by Judge Padova, but that didn't happen until 2007. But until it's changed, it has to be the name that's used in the district court. Secondly, the name wasn't material. But also counsel could have had an ethical obligation to advise the various courts to whom he was presented as X, whereas in fact he was presented as Y, to say he's not X. And the government was informed of the false identification in January, January 18th of 2006. This case was still en banc before this court. And the government did not notify the Court of Appeals. Well, neither did counsel. Nobody did because it wasn't material. The name simply wasn't material. First of all, it was material because the original sentence was based on the record of the friend and not of the defendant. But the issue on appeal was restitution. Does apprendi apply to restitution? Yeah, that was a different issue. So it simply wasn't material to what the Court of Appeals was facing. And that's why the government, I would suggest, never notified the Court of Appeals, because they knew it wasn't material. It was material to the district court, certainly. And the district court had every ground to. Which is why Judge Padova hit the roof. Exactly. And that's completely understandable. It sure is. There has to be honesty in the court. That goes without saying. Did you represent him at that time? Excuse me, Your Honor? Did you represent him before Judge Padova, the person? Another attorney in our office was representing him. I represented him on his direct appeal. None of us learned until January of 06 of his true identity. Really? That's correct, yes. It must have been quite a story. Well, the Bureau of Prisons figured it out. The Bureau of Prisons figured it out. The State of New Jersey, where he was really trying to evade, figured it out, because they made him serve his state sentence. So apparently, the State of New Jersey and the Bureau of Prisons figured it out with no problem at all. That's correct. Well, let's get to it. Your time is up. Thank you, Your Honor. Let's get to the government. I think we're going to ask that question initially. Be prepared. Good morning, Your Honors. May it please the court and counsel, my name is Stephen Miller, and I'm urging the court to affirm the sentences below. As you know, Judge, the appellant in this case committed a fraud on the court, and when the district court discovered that fraud... What's the definition of fraud? That word is being thrown around by everybody, judges, lawyers, briefs. I thought fraud had a definition. I mean, it wasn't just my notion that somebody did a bad thing. It's not just... What is fraud? It's not just that, Judge, and I don't pretend to give you the full definition, but I think there's an element of deception and, you know, to use idioms, pulling the wool over some... Is there an intent involved? There is, Judge. Well, counsel made an argument. No one seems to have picked up. I picked on it before I even read it in the transcript. Clearly, this guy wanted to not go to state court. He was lying because he didn't want to face the music from the warrant that was outstanding for the state, which he failed utterly at, because the state figured it out and the BOP figured it out. But that's what he was doing. It's not clear that he had any idea of how you calculate criminal history. He knew he had a criminal history. He knew that Kennard Gregg had a criminal history. There's not a shred of evidence that his motivation here was that he figured out, aha, my calculation under the guidelines about one-pointers and two-pointers and three-pointers is going to make me a higher criminal history if I use my own name rather than Gregg's name. Where is the... I can't find anything. And that argument, by the way, was made below before Judge Padova. It was made very expressly. He didn't really answer it, but the argument was made. So let's hear him. Judge, I think it's fraud, and you can infer that from the circumstantial evidence here in the record. The fact that not only you're correct that he was trying to avoid that warrant in New Jersey, but the fact that this was not a first-timer in the system. This is someone who'd been around the block several times, not only in the state system, but I believe also in the federal system. I'll have to check that. But this is not someone who was a first-timer, and so I think it's maybe giving the appellant a little too much credit to say that he was completely innocent in his intent in not... When we come to his motivation, wasn't his initial motivation a good one? He wanted methadone treatment. Don't we want people who are hooked on drugs to get methadone treatment? He couldn't get free methadone treatment from the VA because he wasn't a vet. Judge, I think that then... Doesn't that sort of balance his intent? Absolutely not. I think that permits, perhaps in Your Honor's view, the lie to the VA. But once he's arrested on the counterfeiting charge, it doesn't permit him to continue that fraud over and over and over again. Yes, I agree with the court that it was... About Judge Arenas' point that you cannot... It's not a crime to... It's not a false statement to make a false statement to a judge. I think that Judge Arenas is right, and I think that it was absolutely not the main consideration of Judge Dalzell in imposing the sentence here. But don't we have to remand then? If Judge Dalzell based his sentence in part on an impermissible crime, then isn't a remand essential? It's not, Judge, and here's why. If you review the record, you'll see that Judge Dalzell made a rhetorical point by saying, this man has actively misled several members of the judiciary, the probation office... And he counted them all. He did count them all, Judge, and you'll see that... Some of them are not permissible counts. That's right, Judge, but my point is when you look at the way that he counted it, he didn't try to calibrate the sentence based on the number of alleged 1001 violations. It was simply a rhetorical point to emphasize the scope of this man's fraud, and the sentence is not going to change if you remand it to... Well, we don't know. Now, no, you can't tell us that if we remand it, Judge Dalzell will put back the same sentence after he counted something that was impermissible. We don't know what Judge Dalzell will do. Judge, I submit to the court that you do, and here's why. Only because Judge Dalzell, as we just went through throughout the record, didn't make his sentence dependent on the number of 1001 violations, and the court was actually quite clear in saying the maximum has to be reserved for somebody, and it's this guy. So I submit to the court that if you remand and the judge says... I'm not trying to ask you to predict via mind reader what Judge Dalzell is going to do. I'm simply asking you to review this record. Yes, you are. No, Deborah. You just told us what Judge Dalzell was going to do. I'm asking you to look at the record and what he said before, which is that the maximum has to... Even if we think that there's a very slim chance that he'll change the sentence, and frankly I happen to believe that, still, if it's based on wrong factoring, don't we have to give the defendant the chance for that slim chance? In this case, no, Judge. I think the reason is if you thought... Let me rephrase my answer. If you thought that Judge Dalzell imposed this sentence precisely because of the number of 1001 violations he counted up, then yes, I think the court would need to remand. But I submit to the court that that's not a fair reading of the record. All right. Can we go to a very important point, which is the other appeal, which is what jurisdiction did Judge Padova have to vacate a sentence after it was served? Where does this inherent authority come from when you have a statute and a rule specifying what the court can do? Your Honor, it's the inherent power that this court recognized in its Kendis decision in 1989, which the appellant failed to mention in its entirety of his argument. But maybe I can address the court's point as to whether these statutory enactments and rules abrogate this inherent authority. Didn't the Supreme Court say that in Carlisle? The Supreme Court said that if the Congress speaks directly to the point and they have to speak with a level of clarity to the point, then yes, the inherent authorities will be abrogated. And I submit to the court that that hasn't been done here. If you look at 3582, both from its wording and its structure, and if you want to go deeper into its legislative intent, the court will see that the clear intent of this statute was to provide some safety valves to reduce a defendant's sentence. What about the rule? Well, Your Honor, 3582 incorporates Rule 35, and Rule 35 speaks in terms of the court will have seven days to correct an arithmetical, technical, or other error. And, Your Honor, This court has held that it's jurisdictional and held it in a published case and held it in a non-presidential case, which I was on the panel. You're right, Judge. It's a jurisdictional defect. Judge, absolutely. And the rules are jurisdictional if they apply. And what I'm telling you is that they don't apply in this case. They don't apply. Excuse me. Oh, go ahead. Why doesn't it apply by its clear language? Because the language isn't clear, Judge. Because the language of Rule 35 speaks in terms of arithmetical or technical error. And if we had an error of this piece. Or other clear error. It says within seven days after sentencing, the court may correct the sentence that resulted from an arithmetical, technical, or other clear error. That's right, Judge. Doesn't that just cover the waterfront? It doesn't for two reasons. Because the term other clear error in this context, when it's modified by the two words that precede it, indicate the type of error that is at issue here. And that's not what we're dealing with. In the case I sat on the panel, now, again, it was non-presidential, but the judge who attempted to modify the sentence was not an arithmetical or anything like that. It went to the right core of the issue in the case. And the judge tried to do it after the seven days. And the panel held, no, you can't do that. I mean, it treated that catch-all phrase pretty broadly. May I ask you one other question? Yes, sir. Let's assume a man's about to be sentenced. And he hoax up the story that he came from a very deprived background because he wants to convince the court to give him sympathy under Booker, you know, as a character of the defendant, that he was abused background and everything. Turns out it's all funny. He's made it up. He sold it to the probation department. They put it in the report. Now, three years later, somebody goes up and finds out he was raised on Park Avenue and had plenty of money and everybody was lovely to him and, in point of fact, almost got into Yale. I mean, he was terrific, terrific background. And the prosecutor says, you know, the judge was very lenient to this guy and he actually lowered the sentence a little bit for him under Booker because of this horrible background. Did they then make a motion? The prosecutor says, vacate the sentence. He committed a fraud on the probation department and we're now going to vacate this sentence and resentence him as a Park Avenue paltroon rather than a center city of Camden impoverished person. I think the answer has to be yes, Judge, and that as an exercise... You open up some can of worms, especially since nobody's busy defining fraud. It's not a can, respectfully, Judge, because... Every defendant tries to sell a picture of himself. That will create sympathy to the court in some way or other. Paul Stam, I guess, was one of them. The only thing that makes this case different is it's quantifiable because of the criminal history. But in most of the cases, it's not quantifiable. But also, Judge, we do depend on a certain amount of prosecutorial discretion here in choosing which of these cases to try to vacate the orders. I agree with the court that in order to have the power to vacate a terrible wrong like this, necessarily the rule has to be expansive enough for the government to technically be able to appeal a fraud like that. Are you telling us that the U.S. Attorney's Office routinely, when it doesn't like a sentence, will move to vacate the sentence, notwithstanding the time limit in Rule 35? No, Judge, I was actually making the opposite point, that I don't think this will be a remedy that's often employed. Judge Arenas was saying that this is something that will be used over and over and over again. My point was that as a matter of prosecutorial discretion, and the reason that these facts were so troublesome is that it's a significant burden on the government to go back and reopen one of these cases. It's six months difference, that's all. No, no, but in our resources, to have to go back and vacate a prior judgment, it's one less person that we're able to go after on the outside. What happened to the fingerprints? I mean, I can't understand how somebody can be in prison and the prison officials not know who's there. I couldn't agree with you more, Judge. I think it speaks to the problem of... Yes, so what happened in this case? I just don't know, Judge, but I think it speaks to the point of the danger of the rule that the appellant asked the court to adopt because there's not this guaranteed check when defendants come into the system, apparently. I think that they fingerprint them as soon as they get into... Well, first, as soon as they're charged, they get fingerprinted. They do, Judge, but as the court's pointing out, it didn't work here. The only time... Well, something happened. They did send the fingerprints into Washington, as I read the record. Is that right? They did, but again, Judge, the only time this was discovered was by the defendant's own admission when there was a condition... No, no, no, no. Let's take the government. The government's the one that has the fingerprint evidence. So can you explain to us why, when the fingerprints were... The lab in Washington, is that right? I think that's right, Judge. Well, I thought they were sent... Sent to Washington, but I don't know that it went to the lab for comparison. Well, I was just at American Law School. If they didn't go to American Law School, where did they go? I mean, you being the government, I'm not being facetious, you being the government had the capability of ascertaining who this defendant was, right? Judge, that's got to be the right answer, yes. But I don't know why it happened here. The Bureau of Prisons did it? No, the Bureau of Prisons didn't, Judge. It was the probation officer who found it out when the defendant admitted. I disagree. The record makes it fairly clear that the Bureau of Prisons found it almost immediately. And not only did they find it, the state knew it. And so the very thing he was trying to avoid, which was the state warrant, as soon as he was released from his federal time, he was immediately handed over to the state because they knew who he was. Bureau of Prisons did know. They did find out. They told the state. The state communicated. He went right from the federal custody to the very state custody he was trying to get out of. And it was only after that, that the probation. The record is very clear on that. Judge, it speaks to the incentives of the appellant's rule in this case. I'm sorry, we didn't hear that. It speaks, Judge, to the incentives of the rule that the appellant is asking the court to adopt here. The appellant is essentially asking you to adopt a rule that says that courts cannot redress a fraud on themselves after seven days. That's what the rule says. And that's what the statute says. Respectfully, Judge. That's exactly right. Judge, it's not. Rule 35 speaks in terms of error, and a fraud is not an error. Clear error. Well, fraud is not a clear error either. And Rule 3582 speaks in terms of modification. And this is not in the record, let me tell you. But actually, you think that we don't even have jurisdiction over the first appeal. We have jurisdiction over the sentence appeal. But because you have a motion to dismiss that was referred to the merits panel by the motions panel. Originally, they denied it, and then they vacated that and referred it, which is correct. So we should dismiss the appeal, shouldn't we? I think that's right, Judge. And the reason is that Judge Padova, once the decision has been vacated below, he can impose a sentence. It can be concurrent or consecutive, whatever he's going to do to the Judge Dalzell sentence. And at that point, the Court could consider all of these same issues. He can appeal at that point. Yes, Judge. But we do have jurisdiction, obviously, over the mandamus. But that's a tough test. It's a very tough test. Whether to use it. And the level of debate that we're engaged in at this point, I suggest to the Court, speaks to the fact that this is not a clear, undisputed error of the type that mandamus is appropriate for. Well, we're going to decide that. I mean, that's precisely the issue before us, whether this is an appropriate subject for mandamus. Did he have any other? What was the other option? The other option, Judge, was to go through the resentencing before Judge Padova and then appeal this in the consolidated fashion that everything else in this case is consolidated with. Okay, I think we understand. Is he incarcerated now? Judge, I don't know the answer to that. I guess he would be, that's right, because he received the 60-month sentence from Judge Dalzell. Yeah. He's serving that sentence. When was that? So that if he, if we dismiss the appeal and deny the mandamus, he would have the opportunity, while he was still in custody, anyhow to appeal. That's right, Judge. Okay. Your Honor, we urge the Court to affirm the rulings below and urge the Court to affirm the power of District Courts to protect themselves from these problems. Thank you. Mr. McCaldin. I just wanted to ask you on that last point, Counselor. You know, Judge Sloboda pointed out we're concerned with the District Court's jurisdiction, but of course we're first concerned with our own jurisdiction. This Court. And if we don't have jurisdiction, whether or not the District Court had jurisdiction, we have to dismiss the appeal. For that, there's no question. And the question then is, if we don't have jurisdiction because this is not a final order and it doesn't come in the collateral order doctrine, and we do have jurisdiction, no doubt, in the mandamus, but that if, in fact, he has an adequate remedy, because if he's sentenced again, he's going to be, he's going to be in custody anyhow, that maybe the standards for mandamus, no matter how strong his argument, aren't met. This case meets the standards for mandamus because the test is whether or not this would create piecemeal litigation or avoid it. In this case, we have all the cases here before the Court. It's in the interest of judicial economy to decide these issues now. Why didn't you just tell Judge Greenberg that double jeopardy has been said to be an appropriate collateral order? That's the second reason. Double jeopardy clearly falls within the collateral order doctrine. Yeah, well, Judge Greenberg knew that. I met Judge Greenberg. But if the Court felt that there was no double jeopardy because sentencing is not the equivalent of trial, then you're not in the collateral order doctrine because the double jeopardy, and that's why when there's an appeal taken, and the person could always say, oh, if you do that, it's double jeopardy, it doesn't freeze trials because even though the trial court might lose jurisdiction, if the trial court knows it's a ridiculous, frivolous appeal, the Court can go on. I think the Supreme Court, in witty, made clear that a second sentencing is a double jeopardy issue. So I think clearly the collateral order doctrine does apply in this case. Well, in addition, I think it also applies, mandamus clearly applies, because otherwise we have peaceful litigation. The issue was before the Court. The jurisdictional issue was clear. That's not the only issue on mandamus. Judge Greenberg believes very strongly that mandamus is very tough. Indeed, I had to dissent on that very issue on another panel that I sat with Judge Greenberg. Now you don't know how much that pained me. Well, Your Honor, I think... Go ahead. Yeah, this is really important. Go ahead. Your Honor... So that one of the issues before us is whether we have jurisdiction because the argument on the other side is that vacating the sentence after it has been served is not a final order until he has been resentenced. That's the argument on the other side. Your answer to that briefly is... Two points. One, in terms of double jeopardy, this falls under the collateral order doctrine. We look at the Witte case from the Supreme Court. It makes clear that a second sentencing is a double jeopardy issue. Secondly, it falls under mandamus, which requires, first of all, that there be clear error. This is clear error. This is a classic example of where mandamus or writ of prohibition should be used to prevent the district court from exceeding its jurisdiction. It's that double jeopardy is appealable because of the injury if you're going to be subject to double jeopardy. But the Supreme Court, is it double jeopardy merely because a sentence is going to be imposed? It may be double jeopardy, but should the collateral... It's a separate question to determine whether the collateral order doctrine applies. The Supreme Court in Witte made clear that double jeopardy does apply to a second sentencing. Right. But does that mean that the collateral order doctrine applies? It does, Your Honor. Did the court say that? Your Honor, it made clear that the double jeopardy principle applied. It does apply. But the question is, does the collateral order doctrine apply? As long as there's an... Because the collateral order doctrine is not the same as double jeopardy. It was created and takes into account double jeopardy because that's the kind of a thing that can't be remedied on an appeal after a conviction because you go through all this trial. But what does this guy go through if he's sentenced again? Nothing. He stands there and a judge imposes a sentence. Double jeopardy clause protects against the exposure to second jeopardy. And that's what we are arguing. But why should that be elevated to mean that there's a collateral order jurisdiction? Fine. You win on double jeopardy if you're sentenced again. And you're sentenced. You can win on double jeopardy. But why does the court have jurisdiction before that? Because the collateral order doctrine is because of the terrible harm it's created if you have to wait to appeal. But it won't be true for him. Mr. McTelton, I know your time is up. But Judge Airena has a question. I have one question I don't know the answer to. Assume that... Forget double jeopardy for a moment. Assume we feel that Rule 35 and the statute make the action that Judge Padova did wrong. What gives us jurisdiction to review that decision? In other words, if we're based not on double jeopardy where collateral order doctrine does apply, but we're limited solely to our view is that it was Rule 35. That has to proceed under mandamus or writ of prohibition. In other words, the only way we could fix that problem would be by mandamus. That's correct. If we decide that mandamus is inappropriate, then even if we think it's wrong, we don't have jurisdiction to correct it. That's correct, Your Honor. Mandamus, however, is aimed at preventing piecemeal litigation. You're right. I don't want to argue the merits of mandamus. Very well. Okay. Thank you, Mr. McLaughlin. Thank you, Your Honor. Thank you. We will take this matter under advisement. Can we go into the long case? Do you want a break? No, just a short break. Before the next appeal, because that's going to be a long one. Oh, yes.